Bertram Harnett, J.
Part of the legislative design of the "no-fault” auto liability statute (Insurance Law, § 670 et seq.) traces the removal of certain motor vehicle accident cases from the courthouse. To the extent that design is clear, cases which cannot enter through the front door should find the back door locked as well. The disputative key is arbitration.
After Ruth Fox was injured in an auto accident, she filed for first-party benefits under the "no-fault” law with Banner Casualty Company. First-party benefits are available to an auto accident victim from the insurer of the victim’s own car regardless of fault. (Insurance Law § 671, subd 2; § 672, subd 1.) Banner had insured the car in which Ruth Fox was a passenger. But, it says it canceled that policy before the accident occurred. When Banner failed to honor her claim, Ruth Fox demanded arbitration. She declares that pursuant to subdivision 2 of section 675 of the Insurance Law and the terms of the Banner policy, she can arbitrate rather than *773 litigate her disputed claim. Banner moves here to stay that arbitration on the ground that because of the cancellation there was no contract at all in force at the time of the accident.
Unquestionably, Banner issued the policy. Ruth Fox presents at least a colorable argument that her car owner avoided cancellation by making a premium payment when demanded. There appears to be an ambiguity in Banner’s cancellation procedures which creates an issue of whether it effectively canceled its policy. That is an issue for an arbitrator, not the court to resolve.
Under ordinary circumstances, a court may stay arbitration while it decides, at the threshold, whether a valid contract exists which calls for arbitration. (CPLR 7503; Matter of Rosenbaum [American Sur. Co. of N. Y.], 11 NY2d 310; Matter of MVAIC [Malone], 16 NY2d 1027.) But, the "no-fault” auto liability statute creates special tools designed to work its special purposes.
Subdivision 1 of section 675 of the Insurance Law provides for prompt payment of first-party benefits after presentation to the insurer of proof of loss. And, in case of dispute, subdivision 2 of section 675 provides: "Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer’s liability to pay ñrst party beneñts, the amount thereof or any other matter which may arise under subdivision one of this section to binding arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.” (Emphasis added.)
Similarly, provisions of Banner’s policy written in by the Insurance Department regulations provide any claimant of first party benefits with the option of arbitrating "any matter relating to (their) claim.” (11 NYCRR 65.2 [a], Arbitration; emphasis added.)
Under these provisions, a claimant’s access to arbitration is broad and uncluttered. "Any dispute” would seem to mean any dispute. (Matter of Green Bus Lines [Bailey] 80 Misc 2d 483; Matter of Nassau Ins. Co. [Ebin] 81 Misc 2d 168; Matter of Nassau Ins. Co. [Ebin] 82 Misc 2d 513; Matter of Bruhns [Zurich-Amer. Ins. Cos.] 85 Misc 2d 508; Matter of Nassau Ins. Co. [McMorris] NYLJ, Dec. 22, 1975, p 14, col 5.)
In Matter of Empire Mut. Ins. Co. (Faulkner) (52 AD2d 668), the court referred to arbitration an issue of whether an insurer who had concededly canceled its policy was estopped *774 from denying its existence by later restorative conduct. (Cf. Matter of Allcity Ins. Co. [Robinson] NYLJ, May 3, 1976, p 7, col 4.) The specific language of this statute controls the rules fashioned under the general terms of CPLR 7503. (Matter of Empire Mut. Ins. Co. [Faulkner] supra.)
This is not a case where a policy never existed. Plainly, one did; plainly, the insurer-insured relationship had been established. The issue is whether a cancellation took place within that policy and its set of governing procedures. Actually, this case where the insured argues his existing policy remains in force without cancellation is more compelling than Faulkner where the insurer had clearly cancelled coverage for nonpayment. There, though only later behavior raised the question of whether an admittedly canceled policy was restored, the Appellate Division, Third Department, directed the matter to arbitration.
The social principles of "no-fault” legislation lend persuasion to relatively quick arbitrative channels rather than judicial ones. Presenting whole cases to arbitration avoids the victim’s prejudice and the court drains now associated with the bifurcated system for resolving uninsured motorist claims. Court trials of "threshold issues” before arbitration can proceed only serve to delay recovery and clog the courts with disputes easier and better left to arbitration. (Matter of Nassau Ins. Co. [Ebin] supra; Matter of Nassau Ins. Co. [McMorris] supra.)
Proper and prompt compensation of auto accident victims and the concomitant exorcism of time consuming litigation are part of the "no-fault” scheme. (Musolino v American Consumer Ins. Co., 51 AD2d 1036.) The "no-fault” statute recognizes arbitration as a speedy way of resolving disputes. Encumber that quick claim process with formal judicial foreplay, and you infiltrate its justification.
Many important disputes are now resolved by arbitration. The Legislature has put its faith in arbitration. The court must implement that spirit in all appropriate cases.
The motion to stay arbitration is denied in the short form order signed today.